IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDO GINSBURG, M.D., and | : | CIVIL ACTION |
| BRIAN P. YUSKEVICH, M.D. | : | |
| | : | |
| v. | : | |
| | : | |
| ARIA HEALTH PHYSICIAN | : | |
| SERVICES, ARIA HEALTH | : | |
| SYSTEM, and RANDY K. | : | |
| METCALF, M.D. | : | No. 12-1140 |

Norma L. Shapiro, J.                                           August 31st, 2012

**MEMORANDUM**

Before the court is the motion to dismiss the complaint of plaintiffs Edo

Ginsburg, M.D. and Brian P. Yuskevich, M.D. Plaintiffs worked for defendant Aria

Health Physician Services ("Aria HPS"), a subsidiary of defendant Aria Health

System ("Aria Health"), as staff anesthesiologists at Torresdale Hospital in

Northeast Philadelphia. Both Dr. Ginsburg and Dr. Yuskevich worked alongside

defendant Randy K. Metcalf, M.D. in the hospital's cardiothoracic operating room.

Dr. Ginsburg was born in Israel, served in the Israeli Navy, and is a disabled

veteran. Dr. Yuskevich is Russian and Lithuanian. Both doctors are Jewish.

Plaintiffs bring claims for hostile work environment and retaliation based on

plaintiffs' national origin and religion, in violation of Title VII of the Civil Rights

Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"), and

Dr. Ginsburg claims violation of the Americans with Disabilities Act ("ADA") and

the PHRA. Plaintiffs also bring state-law claims for breach of contract, intentional

infliction of emotional distress, assault, and violation of the Pennsylvania

Whistleblower Law ("PWL"). Defendants move to dismiss all 12 counts of the complaint. The motion to dismiss will be granted as to the breach of contract and PWL claims, and denied for all other claims.

## I. Alleged facts

The complaint alleges facts concerning the actions of defendant Dr. Metcalf at Torresdale Hospital and the alleged failure of defendants Aria Health and Aria HPS to take corrective action. Dr. Metcalf referred to Dr. Ginsburg as speaking "the Jews language" on "multiple occasions." Compl.¶ 54. Dr. Metcalf "made derogatory and vulgar comments about Dr. Yuskevich's Russian/Lithuanian heritage and Dr. Yuskevich's sex life with his wife." *Id.* ¶ 55. Dr. Ginsburg was severely injured while in the Israeli Navy and cannot walk normally; Dr. Metcalf mocked the way Dr. Ginsburg walks. *Id*. ¶ 57.

Dr. Metcalf made "threats of physical violence against Plaintiffs." Compl. ¶¶ 3, 61. "During a June 2009 incident, Metcalf brandished his fist inches from Dr. Ginsburg's face, verbally assaulting him, stating, 'fuck you motherfucker, let's go finish this business outside now!'" *Id.* ¶ 60. Dr. Metcalf "verbally attacked Dr. Yuskevich and waived a bloody suction catheter inches from Dr. Yuskevich's face." *Id.* ¶ 62. During a cardiac procedure, Dr. Yuskevich noticed air in the line of a heart-lung machine and "called out that there was air in the line." Dr. Metcalf said, "I don't fucking care, start the motherfucking pump, she's going to die anyway!" Compl. Ex. O ¶ 5. Plaintiffs claim Dr. Metcalf has caused them to suffer "severe

emotional distress and bodily injury including but not limited to PTSD, loss of sleep, anxiety, and heart palpitations." *Id.* ¶ 203.

Dr. Ginsburg "told Aria administration that Metcalf had referred to him as speaking the 'Jews Language' and that Metcalf had repeatedly harassed him about his disability." *Id.* ¶ 82. Despite complaints from Dr. Ginsburg, Aria administration "did nothing to discipline Metcalf or otherwise enforce its policies." *Id.* ¶ 83.

Dr. Ginsburg and Dr. Yuskevich requested a meeting with the Chief Operating Officer of Aria Health in February 2011. The Chief Operating Officer canceled last-minute and refused to reschedule. *Id.* ¶ 86.

Dr. Ginsburg resigned from Aria in July 2011. *Id.* ¶ 88. Aria HPS and Aria Health "refus[ed] to provide [Dr. Ginsburg] with an employment reference for purposes of Dr. Ginsburg's search for subsequent employment." *Id.* ¶ 96.

On August 24, 2011, Dr. Ginsburg and Dr. Yuskevich filed formal charges of employment discrimination with the EEOC and cross-filed the complaint with the Pennsylvania Human Resources Commission ("PHRC"). *Id.* ¶ 94. After Dr. Yuskevich filed the EEOC/PHRC complaint, Aria "refused to renew the term of his employment agreement, thereby terminating his employment" on November 4, 2011. *Id.* ¶ 95.

Plaintiffs bring 12 counts, all of which defendants move to dismiss:

○        Count I: *Plaintiffs v. Aria Health and Aria HPS* - Title VII (hostile work environment)

3

○　　Count II: *Plaintiffs v. Aria Health and Aria HPS* - Title VII (retaliation for reporting hostile work environment)

○　　Count III: *Dr. Ginsburg v. Aria Health and Aria HPS* - ADA (hostile work environment)

○　　Count IV: *Dr. Ginsburg v. Aria Health and Aria HPS* - ADA (retaliation)

○　　Count V: *Plaintiffs v. Aria Health and Aria HPS* - PHRA (hostile work environment based on national origin)

○　　Count VI: *Plaintiffs v. Aria Health, Aria HPS, and Dr. Metcalf* - PHRA (retaliation for reporting hostile work environment based on national origin)

○　　Count VII: *Dr. Ginsburg v. Aria Health and Aria HPS* - PHRA (hostile work environment based on disability)

○　　Count VIII: *Dr. Ginsburg v. Aria Health, Aria HPS, and Dr. Metcalf* - PHRA (retaliation for reporting disability discrimination)

○　　Count IX: *Plaintiffs v. Aria Health and Aria HPS* - Breach of contract

○　　Count X: *Plaintiffs v. Aria Health and Aria HPS* - Pennsylvania Whistleblower Law, 43 P.S. § 1423(a)

○　　Count XI: *Plaintiffs v. Dr. Metcalf* - Intentional infliction of emotional distress

○　　Count XII: *Dr. Yuskevich v. Dr. Metcalf* - Assault

## II.  Legal standard

District courts reviewing motions to dismiss under Rule 12(b)(6) must

"conduct a two-part analysis":

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then

> determine whether the facts alleged in the complaint are
> sufficient to show that the plaintiff has a "plausible claim
> for relief."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). If plaintiff fails to plead facts allowing the court to "infer more than the mere possibility of misconduct," plaintiff has not shown it is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

## III. Discussion

### A. Aria Health is an employer

Title VII, the ADA, and the PHRA prevent "employers" from discriminating against employees. 42 U.S.C. § 2000e-2(a) (Title VII); 42 U.S.C. § 12111(2), (5) (ADA) (defining "covered entity" as "employer"); 43 P.S. § 955(a) (PHRA). Defendants argue Counts I–VIII and X of the complaint should be dismissed as to Aria Health because plaintiffs were employed by Aria HPS, not Aria Health. The issue is whether plaintiffs have pled facts showing Aria Health is an "employer" subject to Title VII, ADA, and PHRA.

Defendant Aria Health is "the corporate body [that] provides medical services at hospitals at the Torresdale, Frankford, and Bucks County campuses." Compl. ¶ 15. Aria Health, not Aria HPS, set forth workplace policies and a Code of Conduct for doctors working at Torresdale Hospital. *Id.* ¶¶ 72–83. The Aria Health HR policy (Compl. Ex. I at 81) provides:

> II. <u>PROHIBITED CONDUCT</u>
> Threats, threatening language, or any other acts of aggression

5

> or violence made to or by an employee will not be tolerated.
> [ . . . ] Aria will take swift appropriate disciplinary action
> against any employee or former employee engaging in such
> prohibited conduct.

Defendants argue Aria Health is not an employer but fail to specify which

legal standard the court should apply. Plaintiffs argue Aria Health is an employer

and cite: (1) the common-law agency test; and (2) the "joint employer" test used by

district courts in the Third Circuit under similar factual circumstances.

### i. Common-law agency test

In *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318 (1992), the

U.S. Supreme Court adopted the common-law agency test to determine whether

an individual was an employee or an independent contractor in a case arising

under the Employee Retirement Income Security Act ("ERISA"). The court

provided 13 factors[1] to consider and remanded the action to the Fourth Circuit

Court of Appeals.

In *Clackamas Gastroenterology Associates, P.C. v. Wells*, 538 U.S. 440

(2003), the Supreme Court considered whether a shareholder-director of a

---

[1] These factors are: (1) "the hiring party's right to control the manner and means by
which the product is accomplished"; (2) "the skill required"; (3) "the source of the
instrumentalities and tools"; (4) "the location of the work"; (5) "the duration of the
relationship between the parties"; (6) "whether the hiring party has the right to
assign additional projects to the hired party"; (7) "the extent of the hired party's
discretion over when and how long to work"; (8) "the method of payment"; (9) "the
hired party's role in hiring and paying assistants"; (10) "whether the work is part of
the regular business of the hiring party"; (11) "whether the hiring party is in
business"; (12) "the provision of employee benefits"; and (13) "the tax treatment of
the hired party." *Darden*, 503 U.S. at 323–24.

6

professional corporation was an employee or an employer subject to the ADA. The court noted the 13 *Darden* factors were "not directly applicable to this case because we are not faced with drawing a line between independent contractors and employees. Rather, our inquiry is whether a shareholder-director is an employee or, alternatively, the kind of person that the common law would consider an employer." *Id.* at 445 n.5. The court provided 6 factors[2] to consider and focused on "the common-law touchstone of control[.]" *Id.* at 449.

In this action, *Clackamas* is a more appropriate approach to the common-law agency test. The issue here is not whether plaintiffs are employees or independent contractors, but whether Aria Health is an employer at all.

In the complaint, plaintiffs use the word "Aria" to refer to both Aria Health and Aria HPS. This makes it difficult to tell which facts apply to which defendant. For example: plaintiffs pled Dr. Ginsburg wrote his resignation letter to "Aria." Plaintiffs earlier defined "Aria" as "Aria Health," *see* Compl. at 2, but the resignation letter itself is clearly addressed to Aria HPS, *see* Compl. Ex. K. Nonetheless, plaintiffs have pled facts showing Aria Health, through its workplace policies and Code of Conduct, had control over plaintiffs' work environment. The HR

---

[2] These factors are: (1) "Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work"; "Whether and, if so, to what extent the organization supervises the individual's work"; (3) "Whether the individual reports to someone higher in the organization"; (4) "Whether and, if so, to what extent the individual is able to influence the organization"; (5) "Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts"; and (6) "Whether the individual shares in the profits, losses, and liabilities of the organization." *Clackamas*, 538 U.S. at 449–50.

7

Policy clearly reserves to Aria Health the right to discipline plaintiffs: *e.g.*, threats against employees "will not be tolerated"; Aria Health "will take swift appropriate disciplinary action" against employees threatening others (Compl. Ex. I at 81). Aria Health is an employer subject to plaintiffs' Title VII, ADA, and PHRA claims.

### ii. Joint employer test

District courts in the Third Circuit apply the "joint employer" test when "two entities exercise significant control over the same employees." *Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir. 1997). The joint employer test consists of 3 factors: (1) "authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours"; (2) "day-to-day supervision of employees, including employee discipline"; and (3) "control of employee records, including payroll, insurance, taxes and the like." *Cella v. Villanova Univ.*, No. 01-7181, 2003 U.S. Dist. LEXIS 2192, at *21–22 (E.D. Pa. Feb. 12, 2003).

Aria Health's workplace policies and Code of Conduct show Aria Health had "authority to . . . promulgate work rules . . . and set conditions of employment[.]" *See id*. Aria Health, through its policies, also retained "day-to-day supervision of employees, including employee discipline[.]" *See id.*; *see also* Compl. ¶¶ 72–83. Under either the joint employer test or the *Clackamas* test, Aria Health is an employer subject to plaintiffs' Title VII, ADA, and PHRA claims.

**B.  Plaintiffs are not required to exhaust administrative remedies**

Plaintiffs cross-filed EEOC and PHRC complaints on August 24, 2011. Compl. ¶ 24. The EEOC and PHRC complaints alleged Dr. Metcalf's actions were "motivated by racial animus," and that Dr. Metcalf "mocked the way Dr. Ginsburg walks and regarded Dr. Ginsburg to be disabled." *Id.* at Ex. D. The EEOC issued right-to-sue letters to plaintiffs on January 9 and 27, 2012. Plaintiffs filed a complaint in this court on March 2, 2012.

The PHRA requires plaintiffs to bring PHRA claims to the PHRC before bringing the claims to court. The PHRC has "exclusive jurisdiction over the claim for a period of one year in order to investigate and, if possible, conciliate the matter." *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 471 (3d Cir. 2001). Defendants argue plaintiffs failed to exhaust PHRA remedies before bringing this action in federal court.

A plaintiff is not required to exhaust administrative remedies if the acts alleged in the later action are "fairly within the scope" of the prior administrative complaint. *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984); *Ackah v. Hershey Foods Corp.,* 236 F. Supp. 2d 440, 444 (M.D. Pa. 2002) (applying *Waiters* to PHRA claim). Plaintiffs' claims of national origin and disability discrimination are substantially similar to those alleged in the prior EEOC and PHRC complaints. Because the acts alleged in this action are "fairly within the scope" of the prior EEOC and PHRC complaints, plaintiffs are not required to exhaust administrative remedies before bringing this action. *See Waiters*, 729 F.2d at 237.

9

**C. Hostile work environment claims (Counts I, III, V, and VII)**

Plaintiffs allege defendants created a hostile work environment based on plaintiffs' national origin and religion, in violation of Title VII and the PHRA (Counts I and V), and disability, in violation of the ADA and PHRA (Counts III and VII). The PHRA is "generally interpret[ed] in accord with its federal counterparts." *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996).

A plaintiff claiming a hostile work environment under Title VII must show: (1) "she suffered intentional discrimination because of her protected activity"; (2) "the discrimination was severe or pervasive"; (3) "the discrimination detrimentally affected her"; (4) "it would have detrimentally affected a reasonable person in like circumstances"; and (5) "a basis for employer liability is present." *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Defendants argue plaintiffs have failed to meet the 1st and 5th elements of the *Jensen* test.[3]

---

[3] ADA hostile work environment claims are subject to a slightly different 5-element test. Under the ADA, a plaintiff claiming a hostile work environment must show: "(1) [he] is a qualified individual with a disability under the ADA; (2) [he] was subject to unwelcome harassment; (3) the harassment was based on his disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of [his] employment and to create an abusive working environment; and (5) [his employer] knew or should have known of the harassment and failed to take prompt effective remedial action." *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999). Defendants make the same argument for the ADA claims as they do for the Title VII claims; *i.e.*, Dr. Metcalf's harassment was not for a reason proscribed by the statute.

### *i. Intentional discrimination*

The 1st element of the *Jensen* test "expresses the principle that Title VII is not 'a general civility code for the American workplace.'" *Jensen*, 435 F.3d at 449 (citation omitted). The reason for the harassment must be a reason proscribed by the relevant statute. *Id.*

Dr. Metcalf harassed plaintiffs about their national origin, religion, and disability. *See* Compl. ¶¶ 54–55, 57. Plaintiffs have pled sufficient facts to show Dr. Metcalf's harassment was for reasons proscribed by Title VII and the ADA.

### *ii. Employer liability*

To show the 5th element of the *Jensen* test—a basis for employer liability—a plaintiff must show either: (1) they were harassed by a supervisor; or (2) they were harassed by a co-worker and the employer failed to remedy it. *Andrews v. City of Phila.*, 895 F.2d 1469, 1486 (3d Cir. 1990).

Dr. Metcalf is the Chief Cardiothoracic Surgeon at Aria. Compl. ¶ 2. Plaintiffs are anesthesiologists. Plaintiffs do not explicitly state that Dr. Metcalf was their supervisor. But the court must draw inferences in favor of the plaintiff, and the court can fairly infer anesthesiologists working in a cardiothoracic operating room are supervised by the Chief Cardiothoracic Surgeon. Plaintiffs have pled sufficient facts to show employer liability. The motion to dismiss the hostile work environment claims (Counts I, III, V, and VII) will be denied.

11

### D.  Retaliation claims (Counts II, IV, VI, and VIII)

Plaintiffs allege defendants retaliated against them for reporting the hostile work environment based on plaintiffs' national origin and religion, in violation of Title VII and the PHRA (Counts II and IV), and disability, in violation of the ADA and PHRA (Counts VI and VIII). As with the hostile work environment claims, PHRA retaliation claims are "generally interpret[ed] in accord with [PHRA's] federal counterparts." *See Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996).

To establish a *prima facie* retaliation claim under Title VII or the ADA, a plaintiff must show that: (1) her activity was protected; (2) she suffered an adverse employment action; and (3) a causal connection exists between the adverse action and the protected activity. *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006) (Title VII); *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (ADA). Defendants argue plaintiffs have failed to establish the 1st and 3rd elements of this test. Defendants do not address the 2nd element (whether plaintiffs suffered an adverse employment action).

### i.  Protected activity

"[T]here is no hard and fast rule as to whether the conduct in a given case is protected. . . . Instead, we evaluate the facts of each case in light of the statutory language and legislative intent." *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135–36 (3d Cir. 2006).

Dr. Ginsburg told Aria administration Dr. Metcalf harassed him because of his national origin and disability. Dr. Yuskevich filed complaints with the EEOC and PHRC. Plaintiffs have pled sufficient facts to establish protected activity. *See Curay-Cramer*, 450 F.3d at 135–36.

### ii. Causation

"Causation can be shown through temporal proximity between the protected activity and the adverse employment action; an intervening pattern of antagonism; or the evidence taken as a whole." *Bartos v. MHM Corr. Servs.*, No. 11-1936, 2011 U.S. App. LEXIS 24342, at *10 (3d Cir. Dec. 7, 2011) (*citing Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280–81 (3d Cir. 2000)). The Court of Appeals, considering cross-motions for summary judgment, has held that 2 months between protected activity and an adverse employment decision is "not unduly suggestive" of causation. *See Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004). Where "temporal proximity is not so close as to be unduly suggestive," the Court of Appeals has recognized "timing plus other evidence" as an appropriate test. *Id.* at 760 (citation omitted).

For Dr. Ginsburg, the evidence taken as a whole allows the court to infer causation: Dr. Ginsburg complained about harassment; the Aria Health Chief Operating Officer refused to meet with him about the harassment; Aria administration "did nothing" to correct the problem; and Aria refused to provide employment references to Dr. Ginsburg after he resigned. The court, construing

inferences in favor of Dr. Ginsburg, can infer causation under these facts. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280–81 (3d Cir. 2000).

For Dr. Yuskevich, causation is clearer—he filed an EEOC/PHRC complaint on August 24, 2011, and Aria refused to renew his employment contract a little over 2 months later. Although the Court of Appeals, at the summary-judgment stage, has found 2 months between protected activity and adverse employment event "not unduly suggestive" of causation, *see Williams*, 380 F.3d at 761, two months is sufficient to state a claim for causation and withstand a motion to dismiss. After discovery, the court can apply the "timing plus other evidence" test to determine whether causation exists. The motion to dismiss the retaliation claims (Counts II, IV, VI, and VIII) will be denied.

### E.   Breach of contract claim (Count IX)

Defendants argue the employment agreements were contracts between plaintiffs and Aria HPS only, and not between plaintiffs and Aria Health. Plaintiffs argue discovery will show Aria Health is the *alter ego* of Aria HPS. Defendants also argue that Aria HPS's and Aria Health's policies and bylaws are not contracts, and that no implied duty of good faith and fair dealing can exist if there is no contract.

The Employment Agreements attached to the complaint are between: (1) Dr. Ginsburg and FHCS Physician Services;[4] and (2) Dr. Yuskevich and Aria HPS. Both contracts provide:

---

[4] Aria HPS was formerly known as FHCS Physician Services.

14

2.8   Policies and Performance Standards.  Physician shall abide by all policies, procedures and directives from time to time instituted by Employer, including, but not limited to, those related to Employer's Mission, Vision and Values, practice management and administration, human resource administration, quality assurance, product standardization initiatives, utilization review, practice protocols, clinical outcomes assessment, coding and documentation standards, patient/family satisfaction and peer review, and shall comply with the performance standards to be established by Employer, as in effect from time to time (collectively, the "Governing Policies").

[ . . . ]

8.2   **Entire Agreement.**  Except as otherwise specifically provided for herein, this Agreement, including its Exhibits hereto, set forth the entire, only and complete agreement and understanding of the parties hereto relating to the subject matter hereof.   This Agreement supersedes all prior agreements relating to the subject matter hereof.

8.3   **Modification.**   This Agreement may be amended, modified. superseded, canceled, renewed or extended and the terms hereof may be waived only by a written instrument executed by both parties hereto.

Aria Health's HR Code of Conduct provides:

It is Aria's policy to provide a safe and healthy work environment for employees. The purpose of this policy is to provide guidelines to follow in order to help minimize the risk of personal injury to employees, patients, and damage to Aria property due to acts of violence or aggression. The steps outlined below are part of a risk-reduction and violence prevention program. While it is important that all employees become familiar with the provisions of this policy, Aria discourages employees from engaging in physical confrontations with violent individuals.

[ . . . ]

> Threats, threatening language, or any other acts of aggression or violence made to or by an employee will not be tolerated. For the purpose of this policy, a threat includes physical harassment, attempts at intimidating or instilling fear in others, menacing gestures, bringing firearms or other unauthorized weapons onto Aria property, stalking, verbal or physical abuse, or other hostile, aggressive, injurious, destructive actions designed to dominate or intimidate a reasonable person. Aria will take swift appropriate disciplinary action against any employee or former employee engaging in such prohibited conduct.

### i. Alter ego

Under Pennsylvania law, a plaintiff may pierce a corporate veil only when the corporation is the "alter ego" of another party—*i.e.*, the corporation "was an artifice and a sham to execute illegitimate purposes and [an] abuse of the corporate fiction and immunity that it carries." *Kaplan v. First Options*, 19 F.3d 1503, 1520–21 (3d Cir. 1994) (citation omitted). The Court of Appeals has provided factors for district courts to consider when determining whether to pierce the corporate veil: (1) "failure to observe corporate formalities"; (2) "non-payment of dividends"; (3) "insolvency of the debtor corporation"; (4) "siphoning of funds of the corporation by the dominant shareholder"; (5) "non-functioning of other officers or directors"; (6) "absence of corporate records"; (7) whether "the corporation is merely a facade for the operations of the dominant stockholder"; and (8) "undercapitalization[.]" *Id*. at 1521. Plaintiffs have failed to allege facts relevant to any of these factors. Plaintiffs have failed to state a claim of *alter ego* liability for Aria Health.

### ii. Policies & bylaws

"A handbook is enforceable against an employer if a reasonable person in the employee's position would interpret its provisions as evidencing the employer's intent to supplant the at-will rule and be bound legally by its representations in the handbook." *Bauer v. Pottsville Area Emergency Med. Servs., Inc.*, 758 A.2d 1265, 1269 (Pa. Super. Ct. 2000).

Plaintiffs have not cited any portion of the Employment Agreements showing Aria Health's or Aria HPS's clear intent to supplant the at-will rule and be bound legally by the agreement. At most, the Employment Agreements state that "Physician shall abide by all policies, procedures and directives from time to time instituted by Employer." But this does not show the *employer*'s intent to be bound legally by the Employment Agreements and other policies. The "Entire Agreement" and "Modification" sections of the Employment Agreements show the opposite: Aria HPS intended *not* to be bound legally by its policies outside of the Employment Agreements.

Even if the HR Code of Conduct was merged into the Agreements, it does not show that Aria Health intended to "supplant the at-will rule and be bound legally by its representations[.]" *See Bauer*, 758 A.2d at 1269. The purpose of the HR Code of Conduct "is to provide guidelines to follow in order to help minimize the risk of personal injury to employees, patients, and damage to Aria property due to acts of violence or aggression." Compl. Ex. I at 81. The Code of Conduct is

17

directed *to employees* and not the employer; *i.e.*, the disciplinary actions to be taken by the employer are meant to warn employees of disciplinary consequences.

Plaintiffs have failed to allege facts showing Aria HPS's and Aria Health's Employment Agreements, HR Code of Conduct, or other policies and bylaws are enforceable against Aria HPS or Aria Health.

### iii. Implied covenant of good faith and fair dealing

Because the Employment Agreements are not enforceable against Aria HPS or Aria Health, there is no implied covenant of good faith and fair dealing. The motion to dismiss the breach-of-contract claim (Count IX) will be granted.

### F. Pennsylvania Whistleblower Law claim (Count X)

The Pennsylvania Whistleblower Law ("PWL") provides, in relevant part:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

43 P.S. § 1423(a). A "good faith report" is defined as a "report of conduct defined in this act as wrongdoing or waste which is made *without malice or consideration of personal benefit* and which the person making the report has reasonable cause to believe is true." *Id.* § 1422 (emphasis added).

Plaintiffs reported Dr. Metcalf's harassment and complained of the resulting stress and anxiety. Dr. Ginsburg "tearfully told them Metcalf had turned him into

18

his 'punching bag.'" Compl. ¶ 81. Plaintiffs attempted to meet with the Aria Health

Chief Operating Officer "as a last ditch effort to achieve a compromise whereby they

would continue to work at the Hospital without being exposed to Metcalf[.]" *Id.*

¶ 84. Plaintiffs reported Dr. Metcalf with consideration of personal benefit; there is

no "good faith report" under the PWL. The motion to dismiss the PWL claim (Count

X) will be granted.

### G. Intentional infliction of emotional distress claim (Count XI)

Common-law claims of intentional infliction of emotional distress ("IIED")

are generally preempted by the PHRA if they are based upon the same allegations

of discrimination in the PHRA claim. IIED claims are not preempted by the PHRA

if they are based upon egregious or outrageous conduct. *Belverena v. Cent. Parking*

*Sys., Inc.*, No. 05-4364, 2005 U.S. Dist. LEXIS 25911, at *6–7 (E.D. Pa. Oct. 31,

2005). Here the claims are not based upon the same allegations of discrimination in

the PHRA claim. Whether plaintiffs have stated IIED claims depends on whether

the conduct alleged was egregious or outrageous.

Under Pennsylvania law, a plaintiff claiming IIED must show "the conduct

[is] so outrageous in character, and so extreme in degree, as to go beyond all

possible bounds of decency, and to be regarded as atrocious, and utterly intolerable

in a civilized society." *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1988). "[I]t is

extremely rare to find conduct in the employment context that will rise to the level

of outrageousness necessary to provide a basis for recovery for the tort of intentional

19

infliction of emotional distress." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988).

Although it is extremely rare to find conduct rising to the IIED level in the employment context, plaintiffs have sufficiently pled facts showing egregious or outrageous conduct. Purposefully starting a heart-lung pump with air in the line and waving a bloody catheter in a person's face is egregious and outrageous conduct—at least egregious and outrageous enough to withstand a motion to dismiss. Because the claim is based on egregious or outrageous conduct, it is not preempted by the PHRA. *See Belverena v. Cent. Parking Sys., Inc.*, No. 05-4364, 2005 U.S. Dist. LEXIS 25911, at *6–7 (E.D. Pa. Oct. 31, 2005). The motion to dismiss the IIED claim (Count XI) will be denied.

## H. Assault claim (Count XII)

Defendants argue the court should decline to exercise supplemental jurisdiction over the assault claim if it dismisses the federal-law claims. Because the court will not dismiss the federal-law claims, there is no reason to dismiss the assault claim. The motion to dismiss the assault claim (Count XII) will be denied.

## IV. Conclusion

The motion to dismiss will be granted as to the breach of contract claim (Count IX) and the Pennsylvania Whistleblower Law claim (Count X). The motion to dismiss will be denied as to all other counts. An appropriate order follows.